IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RANDY CLARK,

    Plaintiff,

v.                              NO. CIV 97-1157 LH/DJS

THE CITY OF ROSWELL, HOMER
J. TRUJILLO and PAUL SORENSEN,
Individually and in their Official
Capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court following a March 4, 1999 hearing, during which the Court took the issues addressed herein under advisement. These issues involve potential municipal liability for the City of Roswell and liability for Defendant Sorensen. Specifically, Defendants' Motion for Summary Judgment (Docket No. 41) seeks a ruling that the City did not have a custom or policy of retaliation against individuals who spoke out about matters of public concern (Defendants' Memorandum Brief at 24) and that Defendant Sorensen has no liability either because (1) he is entitled to qualified immunity; or (2) because there is no evidence to justify supervisory liability. Defendants also seek a ruling that the claim of retaliation under the Fair Labor Standards Act is time barred. For the reasons that follow, the Court concludes that Defendant's Motion for Summary Judgment shall be **granted in part.**

1

**Supervisory Liability Issue**

In an Order issued subsequent to the hearing (Docket No. 57), the Court held that there may be liability related to the actions of Defendant Trujillo, deputy fire chief, and declined to grant summary judgment on his behalf. It is Clark's position that, as Defendant Trujillo's supervisor, Defendant Sorensen should be liable for Trujillo's acts because it may reasonably be inferred that Sorensen knew of Trujillo's improper motive. Clark argues that in making false, malicious and defamatory remarks to the hiring committee, Trujillo was carrying out Sorensen's orders and directives, to whom he directly reported. Paragraph 64 of the complaint alleges that Capps and Sorensen displayed indifference to the obvious improper interference in the hiring process and/or also took actions and were participants in improper efforts to deprive Plaintiff of re-employment and to harm his reputation and career prospects.

As support for these allegations, Clark relies on four factual matters contained in the record. First, when Clark originally approached Sorensen about problems with time-keeping, his response was that Clark could "just do the records himself". Disputed Fact No. 60; Plaintiff's Fact No. 79. Second, that Sorensen knew that Clark had published the Generic Newsletter and that Sorensen regarded it as "just another piece of trash". Disputed Fact No. 26. Third, that Trujillo and Sorensen had offices next door to one another, that they had a close working relationship and talked daily. Plaintiff's Fact No. 98. Fourth, that Trujillo and Sorensen had a number of conversations about the FLSA lawsuit. Disputed Fact No. 60. Clark argues that these facts establish a sufficient causal connection between Trujillo and Sorensen to render Sorensen

liable.[1]

Defendants respond to Clark's arguments by stating that he has proffered no evidence that Defendant Sorensen was involved in the hiring process.

Clark argues that it may be reasonably inferred that Sorensen knew of Trujillo's improper motive, based upon their close working relationship. Clark argues that, although Sorensen was not involved in the hiring decision by the committee, that he had final policy making authority for the Roswell Fire Department ("RFD") and authority to approve the hiring list. Defendants state in their brief that Sorensen was involved in the hiring process only to recommend the names on the committee's list to the city manager.[2] Clark received a letter from Defendant Sorensen, dated September 2, 1994, notifying him of the committee's decision, advising Clark that he was "invited to reapply to the department in the future".

The Supreme Court has made it clear that liability under § 1983 must be predicated upon a "deliberate" deprivation of constitutional rights by the defendant. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Like other § 1983 defendants, supervisory officials may not be held liable on the basis of respondeat superior, but only for their own wrongful behavior. What is at issue here is whether or not the alleged wrongs of one municipal worker (Trujillo) may be imputed to another (Sorensen), in which case personal liability may be imposed on Sorensen. In this analysis, it is not necessary that the supervisor be a policymaker.

---

[1] The Court notes that only two of these averments are not disputed between the parties: the one relating to the Generic Newsletter and the one relating to the office locations for Sorensen and Trujillo and to their close working relationship.

[2] The Court is unable to find factual support in the record for any of these assertions by either party, as to Sorensen's involvement or authority, or lack thereof, in the hiring process. None of the relevant ordinances, statutes, written policies or the like, has been provided to the Court.

Although the circuit courts agree that some type of fault must be attributable to the supervisor before supervisory liability may attach, they differ in their formulations of the requisite degree of fault. 1B MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION CLAIMS AND Defenses at 122 (3RD ED. 1997). The Tenth Circuit uses a deliberate indifference standard. Plaintiff needs to show what the supervisor actually knew, not what he or she should have known. *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992), *cert. denied,* 113 S. Ct. 3038 (1993). Furthermore, supervisory liability must be predicated upon deliberate indifference, not mere negligence. *Langley v. Adams County*, *Colo.*, 987 F.2d 1473 (10th Cir. 1993). Supervisory liability requires "allegations of personal direction or of knowledge and acquiescence" to state a claim for relief. *Woodward* at 1400. Of course, actual knowledge by the supervisor may be proven circumstantially, but it is actual knowledge that must be alleged and proved.

The only undisputed facts that Clark has offered to the Court on this issue are (1) that Sorensen knew that Clark had published the Generic Newsletter and regarded it as "just another piece of trash"; and, (2) that Trujillo and Sorensen officed near each other and had a close working relationship, talking daily. In addition, the record reflects that Sorensen sent a letter to Clark, notifying him of the committee's decision. As stated above, Clark makes conclusory accusations regarding Sorensen's knowledge of Trujillo's improper motive and that Trujillo's remarks to the hiring committee were made in accordance with orders and directives from Sorensen. There is no evidence in the record to support these accusations or to indicate knowledge or acquiescence in constitutional deprivations by Sorensen. There is no affirmative link between Sorensen and Trujillo to show authorization or approval by Sorensen of such misconduct by Trujillo. I do not find even an inference of personal direction, actual knowledge,

4

acquiescence, recklessness or deliberate indifference by Sorensen.

Furthermore constructive knowledge of alleged illegal activities has not been shown. Imputation of constructive knowledge "requires a showing that the underlying unconstitutional misconduct was 'so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of [i]t'" *Jojola v. Chavez*, 55 F.3d 488, 491 (10th Cir. 1995)(citations omitted). Clark has not made such a showing.

Clark relies extensively on *Butcher v. City of McAlester*, 956 F.2d 973 (10th Cir. 1992) to argue that Sorensen ratified Trujillo's impermissibly based recommendation, and that such ratification operates to subject Sorensen to potential liability. I conclude that Clark's reliance on the *Butcher* case is misplaced, given the many distinguishing factors contained in that case.[3] The *Butcher* case had significant direct evidence, coupled with some of the same circumstantial evidence we have here, that the Tenth Circuit considered in reaching its decision that Green ratified and participated in impermissible actions and motives. No such direct evidence is present in this case and I am unable to conclude that the circumstantial evidence here is sufficient to raise

---

[3] In that case, the official in question was a City Manager, Randy Green, who reviewed and acted upon recommendations made to him by the fire chief about disciplinary action against individual firefighters. At the trial, there was evidence that plaintiffs were singled out by Green for spurious adverse personnel action in retaliation for the union representations. There was testimony about direct action taken by Green, including threats he made to discharge fire fighters, and to engage the City's financial resources to engage in grievances or to change work shifts, forcing fire fighters to quit off-duty jobs.

In addition, as noted by Clark in his brief, the *Butcher* case involved evidence of ratification by Green of the fire chief's actions. The Tenth Circuit noted that ratification required that Green "knew of and approved [the fire chief's] actions and adopted [his] unconstitutional motive." *Id.* at 978. The Tenth Circuit concluded that the totality of the personnel actions dating back a number of years and the ongoing multitude of grievances supported both Green's awareness and adoption of the fire chief's motive. Further, that Court concluded that it was "difficult to imagine that Green could not have known that the personnel decisions presented for his approval were motivated to subvert [the union]" and that there was sufficient evidence to show that the City, through the conduct of Green, violated 42 U.S.C. § 1983. *Id.* The *Butcher* Court relied on both the direct evidence cited above and on circumstantial evidence such as that the fire chief's and Green's offices were "right down the hall" and that they were in constant communication, in concluding that the evidence was sufficient to show that Green shared and participated in, the fire chief's impermissible actions and motives.

an issue of material fact as to whether Sorensen shared and participated in any impermissible actions or motive, without more.

For these reasons, I conclude that there can be no supervisory liability for Defendant Sorensen for a violation of 42 U.S.C. § 1983 and that he is entitled to summary judgment on this issue. Consequently, the case shall be dismissed against Defendant Sorensen in his individual capacity.

**<u>Municipal Liability</u>**

Defendants' Motion for Summary Judgment (Docket No. 41) seeks a ruling that the City did not have a custom or policy of retaliation against individuals who spoke out about matters of public concern (Def'ts' Mem. Brief at 24). Clark's response is that Sorensen was the final policymaker for the City, who must be liable for his alleged wrongful conduct in acquiescing in Trujillo's wrongful conduct.

Municipal entity liability depends upon enforcement of a municipal policy, practice, or decision of a policymaker (that is, one with final decision-making authority) that caused the violation of the plaintiff's federally protected rights. The Supreme Court has required plaintiffs seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. *Board of the County Commissioners of Bryan County, Okla. v. Brown*, 520 U.S. 397 (1996). Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)

A municipality cannot be held liable on a theory of respondeat superior in a § 1983 proceeding for the tort of an employee. *Id*. at 691. Plaintiff must show that the city's policies caused the constitutional violation. Under *Pembaur v. City of Cincinnati*, a municipality may be liable for acts of its employees that the municipal employer, through its final policymaking authority, has officially sanctioned or ordered. 475 U.S. 469, 480 (1986). Where a city official "responsible for establishing final policy with respect to the subject matter in question" makes a "deliberate choice to follow a course of action ... from among various alternatives", municipal liability attaches to that decision. *Id*. at 483. A City may also be liable for the actions of an employee who does not have final policymaking authority if a widespread practice exists to the end that there is a "custom or usage with the force of law," or if a final policymaker ratifies a subordinate's recommendation, and the basis for it, thus rendering a final decision chargeable to the municipality. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

The first inquiry is whether or not Sorensen was a "final policymaker". As noted by the *Praprotnik* Court, this is a legal issue to be determined by the Court based on state and local law. *Id*. at 124. Sorensen's status as a final policymaker turns on whether he had authority to establish official city policy on the hiring process in question. *See McMillian v. Monroe County, Ala.,* 520 U.S. 781 (1997); *Dill v. City of Edmond, Okla.*, 155 F.3d 1193 (10th Cir. 1998). In making this determination, I should consider: (1) whether an official is meaningfully constrained "by policies not of that official's own making;" (2) whether the official's decisions are final – i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority. *See Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995).

7

The record before the Court is devoid of any facts that relate to these factors. Additionally, I note a problem with Clark's allegations in this regard. Although the First Amended Complaint alleges that Defendant Sorensen was the fire chief and highest ranking official within the RFD (*Id*. at ¶5), Paragraph 57 of the same complaint alleges that a now-dismissed defendant, John Capps, was the City's final policy maker and that he failed to intervene to prevent other defendants from violating Plaintiff's rights and/or took part himself in the illegal actions against Plaintiff. Paragraph 58 alleges that Capps failed to take any investigative or remedial action and instead condoned, ratified and/or acquiesced in the conduct of other defendants to selectively interfere with the hiring process and violate the rights of Plaintiff. There is no allegation and indeed no proof, that Sorensen was the City's final policy maker with regard to the hiring decision in question. Based on the record before me, I conclude that Clark has not established that Sorensen was a "final policymaker". Accordingly, no liability may be imposed against Sorensen in his official capacity or against the municipality for his actions.

It is this court's task to "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989). For the same reasons that I have concluded that Sorensen did not speak for the City of Roswell with final policymaking authority, I also conclude that Defendant Trujillo did not speak for the City of Roswell with final policymaking authority. This conclusion is stated here to correct and clarify the Court's earlier ruling contained in its March 8, 1999 Order (Docket No. 57). Specifically, I conclude that no liability may be imposed against Trujillo in his official capacity or against the municipality for his actions.

8

Defendants seek a ruling that the City did not have a custom or policy of retaliation against individuals who spoke out about matters of public concern. An act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law, *Monell v. Dep't of Social Services,* 436 U.S. at 690-91, or one involving a "series of decisions". *City of St. Louis v. Praprotnik*, 485 U.S. at 127. A municipality may be liable even for the actions of a non-policymaker if a widespread practice exists to the end that there is a "custom or usage with the force of law". *Id.* Governmental entities may be held liable under Section 1983 for a longstanding practice or custom that constitutes the standard operating procedure of the local government entity. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. at 736., *cited in Randle v. City of Aurora*, 69 F.3d at 441.

Clark has not responded to this argument nor has he put forth any proof of such a custom or policy. I conclude that the City shall be granted summary judgment on this issue.

**<u>Retaliation Claim Under the Fair Labor Standards Act</u>**

The First Amended Complaint alleges at ¶ 55 that Defendants Trujillo and Hunter (now dismissed) took adverse actions against Clark as described earlier in the complaint, subsequent to and in retaliation for Clark having asserted coverage under the Fair Labor Standards Act, in violation of 29 U.S.C. § 215(a)(3). Defendants argue in their motion for summary judgment that this claim is barred by the Act's two year statute of limitations.

As an initial matter, the Court is faced with two procedural issues. First of all, the statute of limitations defense is not contained in Defendants' Answer to First Amended Complaint

despite the fact that it is an affirmative defense. A defending party who fails to raise an affirmative defense by presenting it in the initial responsive pleading sometimes is deemed to have waived the defense. 2 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶8.07[3] (3D ED. 1998). The Tenth Circuit has held that if such a defense is not affirmatively pleaded, asserted with a motion under Rule 12(b), or tried by the express or implied consent of the parties, such a defense is deemed to have been waived and may not thereafter be considered as triable issues in the case. *Radio Corp. of America v. Radio Station KYFM, Inc.*, 424 F.2d 14, 16 (10th Cir. 1970). The effect of waiver is that evidence relating solely to the defense may not be admitted at any later trial, summary judgment hearing, or similar proceeding. Because this defense was not affirmatively pleaded or asserted with a Rule 12(b) motion, it becomes incumbent on this Court to decide whether or not it has been tried by the express or implied consent of the parties.

To determine whether a failure to plead an affirmative defense constitutes a waiver, courts often examine whether the respondent had knowledge of facts necessary to make an affirmative defense and any prejudice to the adverse parties resulting from the failure to plead. *See, e.g., Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810, 813 (1st Cir. 1975)(no waiver where failure to plead affirmative defense does not unfairly prejudice opposing party).

This brings the Court to the second procedural issue facing the Court, which is that Clark failed to respond in his brief to this aspect of Defendants' motion for summary judgment, although his counsel did orally address the issue briefly at the March 4, 1999 hearing. The Court is uncertain whether or not counsel's remarks constitute consent to litigate the statute of limitations issue. Clark's counsel did not object to Defendants' failure to affirmatively plead the statute of limitations defense nor did he argue that any prejudice accrued to his client due to Defendants'

failure to affirmatively plead this defense; he merely apologized to the Court for failing to reply to Defendants' arguments for dismissal in this regard.

In an effort to be fair to both parties, given the inadvertent oversights on both sides, I will evaluate the merits of whether or not this FLSA claim should be barred by the applicable statute of limitations. This action is brought under 29 U.S.C. § 215(a)(3) which prohibits employers from retaliating against employees for assertion of rights under the FLSA. The statute of limitations contained in § 255 of the FLSA applies to this alleged violation. *See Crowley v. Pace Suburban Bus Div.*, 938 F.2d 797 (7th Cir. 1991). Accordingly, unless commenced within two years after the cause of action accrued, this action will be forever barred, except that a cause of action arising out of a willful violation may be commenced within three years after accrual of the cause of action.

Defendants note that the allegedly retaliatory act of not including Clark on the re-hire list occurred on September 1, 1994, yet Clark did not file this lawsuit for nearly three years, on August 28, 1997. At the hearing, Plaintiff's counsel urged the Court to apply a three year statute of limitations, based on a theory of intentional wrongdoing by the City.

At this juncture it is impossible for the Court to properly evaluate Clark's position without a brief setting forth the evidence that he claims supports the application of a three year statute of limitations. Accordingly, Clark is hereby given leave to file a brief in response to Defendants' brief on the FLSA portion of the case only. Such brief shall be filed within ten (10) days of the entry of this Memorandum Opinion and Order and shall not exceed ten (10) pages. Defendants may file a reply brief within ten (10) days of service of the response brief, not to exceed five (5) pages.

**WHEREFORE, IT IS ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 41) is **granted in part**, as specified herein.

**IT IS SO ORDERED.**

_____
**U. S. DISTRICT COURT JUDGE**