IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**RANDY CLARK,**

    **Plaintiff,**

v.                        No. CIV 97-1157 LH/DJS

**THE CITY OF ROSWELL, HOMER
J. TRUJILLO and PAUL SORENSON,
Individually and in their Official
Capacities,**

    **Defendants.**


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff's Motion for Equitable Relief Under the Fair Labor Standards Act (Docket No. 124) and Plaintiff's Motion for Liquidated Damages under the Fair Labor Standards Act (Docket No. 126). The Court, having considered the pleadings submitted by the parties, the applicable law, and otherwise being fully advised, concludes that the equitable relief sought in the form of rehire or instatement, front pay, and liquidated damages is not appropriate and that both motions shall be **denied.**

**Introduction**

    Plaintiff was employed by the Roswell Fire Department (RFD) from 1983 to 1992, first as

a firefighter, then as a driver and finally as a lieutenant. In July 1992, Plaintiff voluntarily left his employment with the RFD to attend law school. In August 1994, Plaintiff sought to be rehired as a firefighter but his application was denied by the City of Roswell.

On August 28, 1997, Plaintiff filed suit in this Court, asserting claims under 42 U.S.C. § 1983 and the Fair Labor Standards Act of 1938 (FLSA). A jury trial was held beginning June 21, 1999. On June 24, 1999, pursuant to a Special Verdict, the jury found:

(1) That Defendant Trujillo violated Plaintiff's First Amendment rights under 42 U.S.C. § 1983 by retaliating against him for reporting violations of the Fair Labor Standards Act (FLSA) at the Roswell Fire Department.

(2) That the conduct of Defendant Trujillo was the proximate cause of damages to Plaintiff.

(3) That the Defendant City of Roswell violated Plaintiff's rights under the FLSA by retaliating against him for reporting FLSA violations at the Roswell Fire Department.

(4) That the conduct of Defendant City of Roswell was the proximate cause of damages to Plaintiff.

(5) That the amount of damages given for a violation of the First Amendment and/or FLSA claim was $32,000 for past lost wages and benefits and no damages for future lost wages and benefits or for emotional pain and suffering.

(6) That punitive damages should be awarded for the § 1983 violation by Defendant Trujillo of Plaintiff's First Amendment rights in the amount of $32,000.

**Request for Rehire**

Section 215(a)(3) of the FLSA prohibits the discharge or any other manner of discrimination against an employee because an employee has filed any complaint or instituted, caused to be instituted or testified in any proceeding under or related to the FLSA. The purpose of 29 U.S.C. § 215(a)(3) is not only to vindicate rights of complaining parties, but to foster an

environment in which employees are unfettered in their decision to voice grievances without fear of economic retaliation or reprisal. *See Saffels v. Rice*, 40 F.3d 1546, 1549 (8th Cir.1994), citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Section 216(b) of the FLSA provides that any employer who violates section 215(a)(3) shall be "liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)." 29 U.S.C. § 216(b).

Ordering a defendant to reinstate (or rehire)[1] a plaintiff "lies within the Court's wide equitable discretion" *See Gonzales v. Sandoval County*, 2 F.Supp.2d 1442, 1446 (D.N.M. 1998), *citing Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 645 F.2d 1365, 1378 (10th Cir. 1981), *cert. denied*, 456 U.S. 964 (1982). Although the Tenth Circuit strongly favors reinstatement as a remedy, the court has discretion to deny reinstatement where a "warm working relationship would not ensue." *Gonzales* at 1446; *see also EEOC v. General Lines, Inc.* 865 F.2d 1555, 1560-61 (10th Cir. 1989). Where the "employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible", a court should deny reinstatement. *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 638 (10th Cir. 1988), *quoting EEOC v. Prudential Federal Savings and Loan Association*, 763 F.2d 1166, 1172 (10th Cir. 1985). The testimony and demeanor of the parties and the witnesses should be taken into account . *EEOC v. General Lines, Inc.* at 1563 (upholding the lower court's determination that reinstatement of the plaintiffs would "promote friction," and that the hostility between the parties would preclude a productive working environment, and noting that the trial court was in a better

---

[1] For purposes of this motion, the Court will apply the law on reinstatement, even though a failure to rehire is what is technically at issue in this case.

position to determine whether the relationship between the parties justified the remedy of reinstatement because it heard the testimony of the witnesses and observed their demeanor.). Reinstatement may also not be appropriate when the plaintiff has found other work. *See Gonzales v. Sandoval County*, 2 F.Supp.2d at 1446, citing *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir. 1993).

Although reinstatement is not mandatory and is a decision that lies within the sound discretion of the trial court, I am aware that, in the absence of exceptional circumstances, it should be granted. The Court is aware that if reinstatement is not ordered, it should "articulate the evidence and rationale underlying its decision." *EEOC v. Prudential Federal Savings and Loan Association*, 763 F.2d 1166, 1173 (10th Cir.1985). I conclude, based upon the following evidence and rationale, that this case contains such exceptional circumstances that a denial of reinstatement is warranted.

The foremost reason that I do not favor reinstatement is the hostility and friction that I saw exhibited by both parties at trial. I noted resentment from several employee witness, many of whom are still employed at RFD and had served on the hiring committee. This resentment, hard to pinpoint precisely, in part appeared related to the fact that Mr. Clark had gone to law school and would not be "career oriented" if he returned to RFD. More than one witness stated that he did not understand why Mr. Clark would want to return to being a firefighter. The gist of this testimony was "why would a guy with an education like that want to work here?" This was a stated factor in not considering Mr. Clark for re-hire and was mentioned repeatedly during the trial.

The type of job involved has affected courts' determinations as to how much antagonism

is required between the parties before reinstatement is disfavored as a remedy. While courts will tolerate some antagonism and order reinstatement in lower-level jobs such as unskilled, assembly-line, or clerical employment, antagonism is less acceptable when the job requires mutual trust and confidence, personal services, discretion or expertise. *See EEOC v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919 (S.D.N.Y.1976), *aff'd without opinion* 559 F.2d 1203 (2d Cir.1977, *cited with approval in Jackson v. City of Albuquerque,* 890 F.2d 225, 231 (10th Cir. 1989).

The antagonism I observed in the testimony and demeanor of Plaintiff and of some members of the RFD struck me as especially intolerable for this particular work environment. Inherent to this job are exceptionally close working conditions, as well as an ultimate importance of trust and confidence in one another. Firefighters' hours range from "downtime" spent in very close proximity to one another to the very dangerous time spent in responding to emergencies. RFD functions as a unit in fighting fires and responding to emergency situations. A lack of trust and confidence in the judgment of a fellow firefighter could lead to crucial misunderstandings, mistakes and even serious physical harm. I am convinced that mutual trust is essential to the operation of RFD and that this is lacking by many members of the current staff at RFD regarding Mr. Clark.

In summary, I conclude that this resentment and lack of mutual trust renders rehiring of Plaintiff inappropriate because hostility between the parties would preclude a productive working relationship given the unusual nature of the work of a firefighter. I realize that personal friction is likely in nearly every case in which a public employee is adversely and illegally treated with regard to his employment, however I believe the circumstances in this case make a productive and amicable working relationship between the parties impossible. *See Spulak v. KMart Corp.,* 894

5

F.2d 1150, 1157 (10th Cir. 1990)(Reinstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible), *citing EEOC v. Prudential Federal Savings and Loan Association* at 1171-1173.

Furthermore, Plaintiff has found other, far more profitable work as an attorney. As discussed at length below, the relatively small amount of compensable damages awarded by the jury indicates to me that the jury did not consider either or both acts of discrimination to have caused an injury that was ongoing even up to the time of trial. Given this factor, I do not consider rehiring Plaintiff to be appropriate.

**Request for Front Pay**

"Front pay refers to the award of money as compensation for the future loss of earnings." *James v. Sears, Roebuck & Co.,*, 21 F.3d 989, 997 (10th Cir. 1994)(*citations omitted*). More specifically, front pay is an equitable remedy intended to compensate for the continuing future effects of discrimination until the victim can be made whole. *Pitre v. Western Elec. Co.,* 843 F.2d 1262, 1278 (10th Cir. 1988). The court may award front pay in its discretion as a substitute for reinstatement where such a remedy would not be feasible. *See Bruno v. Western Elec. Co.*, 829 F.2d 957, 966 (10th Cir. 1987). *See also Carter v. Sedgwick County,* 929 F.2d 1501, 1505 (10th Cir. 1991) ("Decisions concerning front pay under Title VII fall within the trial court's discretion.") A plaintiff claiming front pay has the duty to take reasonable steps to mitigate such damages, *See Spulak v. KMart Corp.*, 894 F.2d at 1158, and a court should consider any amount that the plaintiff could earn using reasonable efforts. *Carter v. Sedgwick County* at 1505.

6

My interpretation of the $32,000 compensatory damage award to Plaintiff (under either Sec. 1983 or under the FLSA) is that the jury awarded Plaintiff damages for lost wages and benefits for the years prior to the time that his law practice became more profitable than firefighting. It seems reasonable to conclude that the jury found that Plaintiff was injured by illegal acts of discrimination up to this juncture, but not after. In other words, as I interpret the jury verdict, the jury concluded that there were no continuing future effects of discrimination, once Mr. Clark began making a significant salary as an attorney, probably in 1996 or 1997.[2] It is logical to infer that as of time period, the jury found that Plaintiff had been made whole, because it did not award him compensatory damages after that date. I agree with this fact finding of the jury.

This conclusion is consistent with the legal concept that a plaintiff claiming front pay has the duty to take reasonable steps to mitigate such damages. *See Spulak v. KMart Corp.*, 894 F.2d at 1158. In fact, Mr. Clark has mitigated his damages, to such an extent that I believe he is now "whole" and entitled to no future equitable relief, in the form of reinstatement or front pay. *See Carter v. Sedgwick County,* 929 F.2d at 1505.

**Request for Liquidated Damages**

The first two sentences of 29 U.S.C. § 216 (b) state:

> Any employer who violates the provisions of section 206 [minimum wages] or section 207 [overtime compensation] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer

---

[2] This would be consistent with Mr. Clark's testimony to the effect that in 1998 he earned 5-6 times more as an attorney than he would have earned as a firefighter.

who violates the provisions of section 215 (a)(3) [retaliatory discharge] of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

In *Brown v. Pizza Hut of America, Inc.,* 1997 WL 271313 at 1 (10th Cir. May 22, 1997), the Tenth Circuit concluded that an award of liquidated damages for retaliation is intended to compensate the plaintiff for "damages too obscure and difficult of proof for estimate other than by liquidated damages", *citing Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942). The *Brown* Court declined to decide the issue of whether or not the provision for liquidated damages in retaliation cases is discretionary or mandatory. Whether mandatory or discretionary, the *Brown* Court noted that the plain language of the second sentence of § 216 (b) clearly implies that only "wages lost" are subject to doubling in a retaliation case.

As an initial matter, I note that Plaintiff has not established any basis for a special award of liquidated damages, i.e., he has not mentioned "damages too obscure and difficult of proof for estimate".

A second difficulty with Plaintiff's request is that he strongly advocates liquidated damages equal to double the $32,000 compensatory damage award. Unfortunately for Plaintiff, it is impossible to determine what "wages lost" were awarded by the jury for the FLSA violation. The second sentence of section 216(b) specifically mentions an award of an "additional equal amount" (in relation to the lost wages awarded). Any determination that I make in this regard would be based upon pure speculation, because the verdict form does not indicate how much in lost wages were awarded for the FLSA violation. Specifically, Question No. 5 of the Special Verdict Form provided for damages for a violation of a First Amendment **and/or** FLSA claim.

8

The jury awarded $32,000 in past lost wages and benefits and concluded that a FLSA violation caused Plaintiff damages. In addition, the award is not only for past lost wages but for benefits too, which exacerbates the problem of identifying the amount awarded under the FLSA for lost wages. Simply put, at this juncture, it is impossible to discern how much of initial $32,000 in damages was for an FLSA violation.[3]

The main gist of Plaintiff's motion is that an FLSA retaliation violation should be analogized to violations under the wage and overtime provisions of the FLSA, wherein courts have construed liquidated damages to be mandatory unless the district court finds that the employer acted reasonably and in good faith. The first sentence of the statute, quoted above, clearly compels a presumption of liquidated damages. The second sentence however, the one with which we are concerned, compels liability of legal or equitable "as may be appropriate to effectuate the purposes of section 215(a)(3)."

As stated above, it is my conclusion that Plaintiff has been made whole by the jury verdict following the discriminatory hiring procedures to which he was subjected. There are no "damages too obscure and difficult of proof for estimate" that have been established. Consequently Plaintiff has not established that an award of liquidated damages would be appropriate.

**WHEREFORE,** for the reasons stated above Plaintiff's Motion for Equitable Relief Under the Fair Labor Standards Act (Docket No. 124) and Plaintiff's Motion for Liquidated Damages under the Fair Labor Standards Act (Docket No. 126) shall and hereby are **denied.**

---

[3] On the other hand, it is logical to assume that the jury awarded Plaintiff something for a First Amendment violation, in that it awarded punitive damages against Mr. Trujillo, after having been instructed that punitive damages could be awarded only if a First Amendment violation were found. In other words, some of the compensatory damages award must be allocated to the First Amendment violation; the entire $32,000 cannot be allocated to the FLSA violation.

**IT IS SO ORDERED.**

                                                            **UNITED STATES DISTRICT JUDGE**